MURRAY, ET AL. *v.* HUFFAKER, ADMR., ET AL.

[Abstract Kentucky Law Reporter, Vol. 7—767.]

**Construction of Terms of Will.**

A testatrix stated in her will "I desire after my decease that all of my personal estate be equally divided between the children of my brother, James Rogers, and the children of my sister, Rebecca Murray. My nieces and nephews are all I have, except two others, brother Hiram Rogers' children, and I do not will them any part of said estate and the children hereafater born to my brother, James Rogers, if any, shall be equal with those now living." It was held that it was the intention to give one-half of her estate to her brother James' children and the other half to the Murray children, and that said legatees take per stirpes and not per capita. Judge Pryor filed dissenting opinion, holding that it was the intention of the testatrix as shown by the will that the nieces and nephews, being sons and daughters of a brother and sister of the testatrix, should take per capita and not per stirpes.

APPEAL FROM RUSSELL CIRCUIT COURT.

April 1, 1886.

OPINION BY JUDGE HOLT:

The will of Elizabeth Huffaker contains this clause: "I desire after my decease that all of my personal estate be equally divided between the children of my brother, James Rogers, and the children of my sister, Rebecca Murray. My nieces and nephews are all I have, except two others, brother Hiram Rogers' children, and I do not will them any part of said estate; and the children hereafter born to my brother, James Rogers, if any, shall be equal with those now living."

At the death of the testatrix there were fourteen of the James Rogers children, their father being yet alive, and but two of the Murray children, their mother being dead. It is contended upon the one side that under the will all should take share and share alike, while upon the other it is urged with equal earnestness that each set of children should take one-half of the estate. The lower court held that the estate, which amounts to about $2,000, must be divided equally between the sixteen children. This opinion was doubtless based upon the belief that the testatrix intended an equal division among them. However, it also construed the clause in question so as to give to any children of James Rogers born after the making of the will an equal share with their brothers and sisters; but no portion of such share or shares were to come out of the portion of the Murray children; and this construction, which is undoubtedly correct, is at war with the idea that the testatrix intended the children of her brother, James, to share equally with those of her sister, Rebecca.

If the testatrix had simply provided that her estate should be divided equally between the children of her brother, James, and her sister, Rebecca, then the words "equally divided" would mean a per capita and not a class division; unquestionably they would take per capita and not per stirpes. Such language alone, together with the fact that the objects of her bounty were equally related to her, would require such a construction. We are not unmindful of the fact that the language used in the first part of the clause strongly favors this view, and that to overcome it a contrary intention should plainly appear. The idea of equality, however, upon which it is based, is beyond doubt contradicted by the latter part of the clause, which plainly looks to two classes of persons. It is ambiguous or of doubtful meaning. It can not be construed as

providing that the share of any afterborn Rogers child should be taken equally from the part of the sixteen children, because it says that "the children hereafter born to my brother, James Rogers, if any, shall be equal with those now living." She evidently apprehended that other individuals might be added to the one class. Such afterborn children were to be equal with individuals of the Rogers class, but not equal with those of the Murray class; and it is therefore clear that the will recognizes the two classes. The language of the clause, when considered entirely, indicates that while each individual of the one class was equally in favor with the testatrix, yet each of one class was not so with each of the other class. This plain distinction drawn by the testatrix can not be disregarded, if her intention is to govern. She undoubtedly intended to draw a line between the two sets of children; indeed, she in substance says so; and her object in making a will was to exclude the children of her brother, Hiram Rogers. We have not reached the conclusion that she intended one-half of her estate to go to the one set of children and the other half to the other, by considering the testimony taken in the case. It was not competent evidence, as there is no latent ambiguity in the will. The judgment is *reversed* with directions to render one in conformity to this opinion.

*Hays & Stone, for appellants.*

*Montgomery & Jones, for appellees.*

---

DISSENTING OPINION BY JUDGE PRYOR:

This action in equity was instituted in the court below seeking a proper construction of the will of Elizabeth Huffaker. The testatrix was a widow without children, and although having brothers living and one sister dead devised her estate to her nieces and nephews. The question presented is, Did her nieces and nephews take as a class representing such interests as would have passed to their parents if the testatrix had died intestate, or did they take per capita. The will reads, "I desire after my decease that all of my personal estate be divided equally between the children of my brother, James Rogers, and the children of my sister, Rebecca Murray. My nieces and nephews are all I have, except two others, brother Hiram Rogers' children, and I do not will them any part of said estate; and the children hereafter born to my

brother, James Rogers, if any, shall be equal with those now living. Signed, Elizabeth Huffaker."

James Rogers, the brother. had fourteen children, and Rebecca Murray, the sister, had two children. Counsel representing the children of Mrs. Murray are complaining of the judgment giving to each of the nieces and nephews an equal portion of the estate, and insist that the two children take under the will the one-half and not the one-sixteenth part of the property devised.

The intention of the testatrix to make an equal distribution of her estate between her nieces and nephews is expressed in such plain and unambiguous terms as would require an express revocation of that intention in some provision of the will before the chancellor would be authorized to give to the one niece and nephew four times as much of the estate as is given to the others. These devisees all stood in the same relation to the testatrix, the one having as much claim on her bounty as the other; and realizing that fact when making her will, she changes the course of descent by excluding her brothers, who were then living, and directs by an express devise that her estate be equally divided between her nieces and nephews, the children of her brother, James, and her sister, Rebecca; not only so, but in order to prevent other nieces and nephews from sharing in the estate, she says (these) "my nieces and nephews are all I have, except two others, brother Hiram Rogers' children, and I do not will them any part of said estate." She is enumerating the nieces and nephews she desires to participate in this equal division and excludes the children of her brother, Hiram, for reasons not disclosed by the will. It is manifest that she did not intend to follow the course of descent, but excluded her brothers and sisters for the reason that she wanted an equal division of her property between such of her nieces and nephews as she believed had claims on her bounty.

If she had given to the children of each one of her brothers and sisters her estate, to be equally divided between them, there would have been some propriety in ruling that they took as a class and not per capita; but even then, under a well settled rule of construction, each niece or nephew would have been entitled to an equal interest. But where the testatrix, as in this case, excludes the children of one brother and directs an equal division between the children of another brother and sister, to hold that two of the

children are entitled to four times as much as the others is sustained by no rule of construction known to the law.

It is argued, however, that this plain intention of the testatrix is defeated, or at least rebutted, by that provision of the will which says "the children hereafter born to my brother, James Rogers, if any, shall be equal with those now living." The testatrix had made an equal division between the children of James Rogers and his sister who were in a condition to take, such of them as were living; and supposing that other children might be born to her brother, James, she provided that they should be made equal with those now living; but she nowhere provides that this equal division plainly expressed in the will is to result in giving to the two children of her deceased sister one-half of her estate. Whether the testatrix intended that each of her nephews and nieces should contribute to make afterborn children equal, or that the children of James Rogers should alone contribute, is the only ambiguity in the instrument or the only provision in the will of doubtful construction. It is urged by counsel that to make the living children of James Rogers contribute to afterborn children a part of what they had received would produce an inequality that the testatrix was attempting to avoid, and therefore she intended they should take as a class and not per capita.

A provision or clause of the will that is of doubtful meaning is made to defeat a manifest intention expressed in plain language by the testatrix that her estate should be equally divided between the devisees. In making this division equal the devisor excluded her living brothers as well as other nieces and nephews, who had the same claims on her bounty, showing that no regard was paid to the rights of those who would have been entitled had she died intestate, and negativing the idea that the devisees were to take what the parent's share would have been if the law of descent and distribution had controlled. In the case of *Purnell v. Culbertson*, 12 Bush 369, the property undisposed of by the widow was to be "divided equally between my nephews, Julius Culbertson, of this county, Mattie Ervine, Etta Case and the children of Thomas D. Russell, nieces and nephews of mine residing in Natches, Miss." It was held that each of the children of Russell took one equal interest with the other devisees. "The words 'equally divided' when used in a will mean a division per capita and not per stirpes,

whether the devisees be children or grandchildren, nephews or nieces, or strangers in blood."

There is no question, however, raised as to this rule of construction; and the sole reason for disturbing the equality provided for by the testatrix is based on the idea that, as the testatrix gave to the afterborn children, if any, of her brother, James, an equal interest with those living, this, if such children were born, produced inequality, and therefore the intention was that the children of the brother and sister should take as a class one-half of the estate. It is certain that the division was equal as made by the testatrix between these nieces and nephewes, then living, and the bare possibility that others might be born. Such a slight inequality if it existed should not be made to defeat the plain purpose of the devisor. The court below decided that the children living took each an equal interest. This construction was proper, and whether any afterborn child of James, the brother, could compel the children of Rebecca Murray to contribute is not a question before us. With these views as to the intention of the testatrix I must dissent from the opinion rendered.